### A. M. Bowling v. Commonwealth.

[Abstract Kentucky Law Reporter, Vol. 7—821.]

**Life Taken in Resisting an Officer.**

While, in an attempt to arrest a person for a public offense, the officer or private person may not in every respect comply with the strict letter of the law, still the person arrested or attempted to be arrested has no right to take life, except to protect his own life or himself from great bodily harm.

**Instructions.**

Where an accused charged with murder is convicted only of manslaughter he can not complain at the trial court for not instructing the jury that he could not be convicted of a greater offense than manslaughter.

**Right to Hold Office.**

Where one is elected and qualified as town marshal in 1882 and is again elected in 1884 to succeed himself, but does not qualify, pursuant to the charter of Mt. Sterling, he holds the office under his election and qualification of 1882 until his successor is elected and qualified; hence in 1885 he is marshal and authorized to act as such and to appoint a deputy.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

May 13, 1886.

OPINION BY JUDGE LEWIS:

Under an indictment for the murder of John Gill appellant was convicted of manslaughter, and seeks a reversal upon various grounds. It appears from the evidence that June 2, 1885, J. D. Wyatt, acting as deputy marshal of Mt. Sterling, under a warrant for carrying concealed deadly weapons, arrested one Boyd at the railroad depot in that city and was proceeding with him to the city court room, accompanied by Gill, the deceased, whom he summoned to assist him, when they were overtaken by appellant, who with a drawn pistol and threat to take the life of the deputy marshal compelled him to release Boyd from custody, whereupon Boyd and appellant started rapidly back to the depot, with a view to leave upon the railroad train that was due within a few minutes.

The marshal immediately followed for the purpose of arresting them, summoning the deceased and three others to aid him. When the railroad train arrived at the depot, going east, upon which appellant and Boyd intended and attempted to go to their residence in another county, appellant went to the ladies' waiting room, from which he conducted a lady to the train and assisted her in getting on it. About the time he was himself in the act of boarding the train, or according to some of the witnesses when approaching the train and near to it, he was seized around the body by two of the persons behind him who had just previously been summoned by the deputy marshal to aid in his arrest, and at about the same time the deceased, Gill, approached him in front with a pistol in his hand, which according to some of the witnesses he put to the head of the appellant, but whether this was done before or after Gill was shot is not certain, as there is a conflict of testimony on the subject, and there is also some evidence tending to show he did not put the pistol against the head of appellant at all.

Appellant at the time he attempted to board the train had a valise and overcoat on his left arm and a pistol drawn in his right hand, and in the struggle to release his arms, which were held to his body by the two persons summoned as helpers by the deputy marshal, the pistol was intentionally or accidentally, it is not certain which, fired, the ball passing through the hand of one of the men, who then released his hold. Appellant then fired a second shot at the deceased, Gill, who was in front of him, which took effect

in the stomach or bowels, causing death the next day. He then fired a third shot at another one of the helpers who did not have hold of him at the time, and after that he was taken into custody. In the meantime Wyatt, the deputy marshal, and another one of the helpers had arrested Boyd, who was a short distance off near the train.

The first ground for reversal we will consider is that the court assumed in the instructions given that Wyatt was a deputy marshal and authorized to act as such. It appears that Punch was duly elected marshal of Mt. Sterling in 1882, and being a candidate for re-election in 1884 received a majority of the votes cast and was declared elected, but he failed to give the bond required by the city charter; and counsel for appellant contends for those reasons the office of city marshal was after the election in 1884 vacant, and Punch was neither authorized to act as chief marshal nor appoint Wyatt as deputy marshal.

The lower court ruled, as we think, correctly, that as Punch had neither qualified nor executed bond after his election in 1884, he was not marshal in virtue of that election, but having complied with the law after his election in 1882, and being duly authorized to act under that election, he under the city charter continued to act and was marshal in 1885, when the homicide occurred, the city charter expressly providing that the marshal should hold his office until the election and qualification of his successor.

As appellant was not found guilty of murder, we do not deem it necessary to discuss at length the instruction to the jury relating to that offense.

The second instruction relates to the offense of manslaughter which may be committed in a sudden affray or in sudden heat and passion without malice, and no objection can be properly made to it; nor is there any attempt by counsel to be made except that the homicide in this case could not have occurred in what is technically called a sudden affray or in sudden heat and passion. The only ground upon which the jury in this case could have found appellant guilty of a less offense than murder, if guilty at all, was that the killing was done in a sudden affray or in sudden heat and passion, and we are at a loss to see how appellant was prejudiced by the instruction.

Instruction 3 is as follows: "The court instructs the jury that

it is the duty of the marshal of the city of Mt. Sterling to be upon the streets at all times and to arrest all persons guilty of a public offense without a warrant of arrest when the offense is committed in his presence, and if the jury believe from the evidence beyond a reasonable doubt that the defendant, Bowling, in the city of Mt. Sterling rescued one Boyd from the custody of Wyatt, the deputy marshal of the city of Mt. Sterling, by physical force and intimidation, and that said deputy marshal summoned the deceased, Gill, and others to aid him in arresting said Boyd and also to aid him in arresting Bowling for the offense of rescuing said Boyd, and that said Gill by himself or with others, in obedience to said summons, attempted to arrest the defendant, and at the time said Gill or the others so summoned informed the defendant of his or their intention to arrest him, and for what offense, or that the defendant knew that said Gill alone or together with the other persons had been summoned by said deputy marshal to aid him in arresting defendant, Bowling, for the offense of rescuing said Boyd from the custody of the deputy marshal, Wyatt, and that they used no more force than was necessary, or reasonably appeared to be necessary, to make said arrest, and that the defendant under such circumstances resisted the arrest and in doing so shot and killed the deceased, Gill, then the jury will find the defendant guilty of murder and fix his punishment as defined in the first instruction."

The two principal objections to this instruction are, first, that appellant was not, as required by Crim. Code, 1876, § 39, informed by the deceased and those with him of their intention to arrest him, and of the offense charged against him for which he was to be arrested; second, that § 43 being presumptory and explicit that "no unnecessary force or violence shall be used in making the arrest," the court improperly inserted in the instruction quoted the words "or reasonably appeared to be necessary." The evidence shows that neither of the three persons informed appellant of their intention to arrest before seizing him around the body, though one of the witnesses testified that the deceased, Gill, told him immediately after the first shot, in substance, not to use his pistol.

The object of the injunction to a person about to arrest another, contained in Crim. Code, 1876, § 39, is to give warning so that he may be informed of the purpose and intention to arrest him for a

public offense, and thus not resist under the belief that he is in danger of losing his life or suffering great bodily harm. But if the person knows he is about to be arrested, and of the offense charged against him, it is not necessary that the officer or person making the arrest should give him the information. It seems to us it would be preposterous to acquit such a person of the offense of taking the life of an officer or person attempting to arrest him merely because he was not duly informed of what he already knew.

In this case the evidence is not only sufficient to authorize the jury to conclude that appellant did know the purpose for which he was seized by the persons summoned to aid the deputy marshal, but the fact is, in our opinion, conclusively established that not exceeding ten minutes before he shot Gill and not more than from two hundred fifty to five hundred feet from where he did shoot him he had committed a most flagrant offense for which he knew the law required his arrest and punishment, and he was heard to declare repeatedly on the platform at the depot, while he was waiting for the train which was momentarily expected, that he would kill any person who attempted to arrest him. In fact, such short time elapsed after appellant rescued Boyd from the officer until he shot the deceased, and so connected were the two events by the acts of appellant and the officer, that all that took place from the rescue to the homicide must be regarded as substantially one transaction.

It was not necessary that Wyatt, the deputy marshal, should have been actually present aiding in the arrest of appellant. He was, however, only ten or fifteen paces away, engaged in arresting Boyd, and was necessarily separated from a portion of the posse he had summoned to aid him in arresting not one but two persons, the separation of whom of course required a division of the deputy marshal and those summoned into two parties. The law requires and provides for the use of force necessary to make the arrest of a person guilty of a public offense, when it reasonably appears necessary to the person making the arrest.

The decisive question in this case is whether appellant believed and had reasonable grounds to believe at the time he shot the deceased that he was in immediate danger of losing his own life or suffering great bodily harm at the hands of the deceased and those aiding him, to prevent which it was necessary or reason-

ably appeared to him to be necessary to shoot the deceased. The court gave him the full benefit of an instruction embodying unconditionally the law of self-defense, and having been found guilty upon that issue he was not prejudiced by any summoning, regularity or departure from the strict letter of the law by those attempting to arrest him, for though, in an attempt to arrest a person for a public offense, the officer or private person may not in every respect comply with the strict letter of the law, still the person who is arrested or attempted to be arrested has no right to take life, except to protect his own life or himself from great bodily harm. As held by this court at the present term, a mere arrest of a person for a public offense even by a private person does not authorize the person arrested to take his life.

The appellant was not prejudiced by the failure of the court to instruct the jury that the defendant could not be convicted of a greater offense than manslaughter if he did not know the purpose of the deceased and those with him was to arrest him, for he was only convicted of that offense.

We perceive no error to the prejudice of appellant and the judgment must be *affirmed.*

*Hargis & Eastin, H. L. Stone, for appellant.*
*P. W. Hardin, for appellee.*